**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MIGUEL OLMO** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **CORRECTIONS, SUPERINTENDENT** | : | |
| **TAMMY FERFUSON, WELLPATH, LLC** | : | |
| **Formerly known as Correct Care, LLC,** | : | |
| **Medical Director STEPHEN WEINER** | : | |
| **D.O., JENNIFER DUMAS, CRNP, JILL** | : | |
| **MCGINLEY RN, FRANCINE MUSETTI RN,** | : | |
| **CYNTHIA CURRIE, MONIQUE AUGUSTE** | : | |
| **LPN, KATHERINE MORRIS RN, JOHN** | : | |
| **DOE MEDICAL PROVIDERS I-V, JANE** | : | |
| **DOE MEDICAL PROVIDERS I-V, JOHN** | : | |
| **DOE CORRECTIONAL OFFICERS I-V,** | : | |
| **JANE DOE CORRECTIONAL OFFICERS** | : | |
| **I-V and SARAH FARRELL CRNP** | : | **NO. 21-4333** |

<u>**MEMORANDUM OPINION**</u>

Savage, J.                                                                                          May 31, 2022

This civil rights and medical malpractice case arises from plaintiff Miguel Olmo's medical treatment while incarcerated at SCI Phoenix in Collegeville, Pennsylvania.  He alleges that the Department of Corrections (DOC) and Wellpath, LLC f/k/a Correct Care Solutions, LLC (Wellpath), its contractor, failed to properly treat him after he complained of a serious medical issue.  As a result, he claims he endured days of excruciating pain and suffered permanent injury.

Olmo has sued the DOC, Wellpath, and a number of identified and unidentified individuals.  He names Medical Director Stephen Wiener, Jennifer Dumas, Sarah Farrell, Jill McGinley, Francine Musetti, Cynthia Currie, Monique Auguste, and Kathryn Morris, as defendants. He includes ten John and Jane Doe Medical Providers and ten John and Jane Doe Correctional Officers.

Olmo claims the named and unnamed individual defendants each acted with deliberate indifference to his serious medical need, violating his Eighth Amendment rights and that they violated their duties of care and intentionally inflicted emotional distress in violation of Pennsylvania state law.

The DOC and its four named employees, nurses Currie, Auguste, McGinley, and Dumas (the Commonwealth defendants) have moved to dismiss.  The individual Commonwealth defendants argue that Olmo has failed to plead facts showing that they were personally involved in providing treatment to him.

We agree. Olmo has not alleged facts, which if proven, would show any personal involvement by Currie, Auguste, and McGinley.  Although he has sufficiently alleged Dumas was personally involved, he has not alleged any facts that would establish she violated his constitutional rights. Thus, we shall dismiss Olmo's constitutional claims against defendants Currie, Auguste, McGinley, and Dumas.

### Background[1]

Plaintiff Miguel Olmo was committed to SCI Phoenix on September 4, 2019. During intake, prison staff learned that he was on several medications for anxiety. Defendant Jennifer Dumas, a nurse practitioner, evaluated Olmo as part of a psychiatric evaluation.  She prescribed Doxepin, another anxiety medicine, to take with his other medications.

Doxepin has several potential side effects, including priapism.  Priapism, the prolonged erection of the penis, is a medical emergency that demands prompt treatment

---

[1] The facts recited here are as alleged in the amended complaint. Am. Compl. (ECF No. 41). We accept them as true and draw all reasonable inferences from them in favor of Olmo.

to prevent serious and permanent harm.   Left untreated, priapism can lead to tissue damage and permanent erectile dysfunction.

A month later, on October 3, Olmo submitted a sick call slip, complaining that he had been suffering from a painful erection for several hours.  He was taken to the infirmary where he was seen by two unidentified nurses.  The nurses "dismissed his concerns and sent him back to his cell."[2]

The next day, Olmo submitted a second sick call slip because his condition had not changed.   The following day, he was seen by defendant Sarah Farrell and an unidentified nurse.  He explained that "his penis had been erect and painful for the last three days."[3] Farrell injected Toradol, an anti-inflammatory drug to treat his pain.

The next morning, Olmo hit the panic button in his cell because he was in "unbearable pain."[4]  He was taken to the infirmary and seen by defendant McGinley, a registered nurse, who noted that his erection had lasted four days, his testicles were visibly swollen, he showed signs of discomfort, he could not lay down, and he had difficulty walking.  Olmo was transported to Einstein Medical Center's Emergency Department.

At Einstein, Olmo informed medical staff that he had suffered from a painful erection for four days.  Einstein doctors recommended conducting a priapism takedown, a procedure that "involves [the] injection of phenylephrine and saline into the penis and simultaneous aspiration of blood from the penis using an 18-guage needle."[5]  The staff

---

[2] *Id.* ¶ 25.

[3] *Id.* ¶ 28.

[4] *Id.* ¶ 31.

[5] *Id.* ¶ 36.

warned Olmo that "because he had an erection for more than 48 hours, the takedown would not likely be successful."[6]

After five failed takedowns, Olmo was admitted to Einstein for "pain control and further surgical intervention."[7]  Two days later, he "underwent penoscrotal decompression of acute on chronic priapism."[8]  He has a permanent penile implant and suffers from permanent erectile dysfunction.

## Standard of Review

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id*. (citing *Twombly,* 550 U.S. at 556).

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The plaintiffs must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8). In other words, the complaint must contain facts which support a conclusion that a cause of action can be established.

In considering a motion to dismiss under Rule 12(b)(6), we first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions. Then, we determine whether the alleged facts make out a plausible

---

[6] *Id.* ¶ 37.

[7] *Id.* ¶ 38.

[8] *Id.* ¶ 39.

claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting

*Iqbal*, 556 U.S. at 679). All well-pleaded allegations in the complaint must be accepted as

true and interpreted in the light most favorable to the plaintiffs, and all inferences must be

drawn in the plaintiffs' favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir.

2009) (quoting *Chrob v. Catterson,* 948 F.2d 1402, 1408 (3d Cir. 1991).

**Analysis**

Olmo brings claims against DOC employees in their individual capacities under

Pennsylvania law and 42 U.S.C. § 1983.  An individual may be liable in a § 1983 action

only if he or she had personal involvement in the wrongdoing.  *Chavarriaga v. N.J. Dep't*

*of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195,

1207 (3d Cir. 1988)).  *Respondeat superior* alone does not give rise to § 1983 liability.

Allegations based on a defendants' "responsibility for supervising" those involved, without

more, are insufficient.  *Rode,* 845 F.2d at 1208.  Rather, the plaintiff must show that the

defendant personally directed or, with actual knowledge, acquiesced in the conduct.

*Chavarriaga*, 806 F.3d at 222 (citing *Rode*, 845 F.2d at 1207).  Allegations of personal

involvement must be pled with particularity, providing time, place, and persons

responsible.  *Rode*, 845 F.2d at 1207–08 (first citing *Boykins v. Ambridge Area Sch. Dist.*,

621 F.2d 75, 80 (3d Cir. 1980); and then citing *Hall v. Pa. State Police,* 570 F.2d 86, 89

(3d Cir. 1978)).

Olmo has failed to allege that McGinley, Currie, and Auguste had any personal

involvement in his treatment.  He does not mention either Currie or Auguste in the body

of the amended complaint and he only alleges that McGinley noted his complaints and

observations. His bald allegations that at "all times material hereto, [each individual

Commonwealth defendant]. . . act[ed] individually and/or as an agent, ostensible agent,

5

servant and/or employee of defendant DOC and/or defendant Wellpath"[9] and that his "erection was visible and obvious to everyone he encountered at SCI Phoenix, including the medical defendants,"[10] are insufficient.  Therefore, we shall dismiss his § 1983 claims against Currie, Auguste, and McGinley.

Olmo has alleged that Dumas was personally involved in his treatment.  She conducted his September 9 psychiatric assessment when he arrived at SCI Phoenix and prescribed Sinequan, which he claims caused his priapism.  This is sufficient to show her personal involvement. But, Olmo has not sufficiently alleged that Dumas violated his constitutional rights.

The Eighth Amendment protection against cruel and unusual punishment extends to the prisoner's right to medical care.  *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976). Failure to provide adequate medical care violates a prisoner's right to be free from cruel and unusual punishment when it results from "deliberate indifference to a prisoner's serious illness or injury."  *Id.* at 104–05.

To state an Eighth Amendment claim for failure to treat his medical condition, Olmo must plead facts which, if proven, would establish: (1) he had a serious medical need; and (2) prison officials were deliberately indifferent to that need.  *Spruill v. Gillis*, 372 F.3d 218, 235–36 (3d Cir. 2004).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  A medical condition is serious when the denial or delay of

---

[9] Am. Compl. ¶¶ 9, 11, 12.

[10] *Id.* ¶ 30.

medical treatment causes "unnecessary and wanton infliction of pain."  *Id.* (quoting *Estelle,* 429 U.S. at 103).

There is no question that Olmo has alleged a serious medical need.  But, a failure to treat a serious medical need alone does not give rise to an Eighth Amendment violation. The state actor must be deliberately indifferent to the need.

Deliberate indifference to a serious medical need is shown when: (1) a doctor intentionally inflicts pain on a prisoner; (2) a prison official denies reasonable requests for medical treatment, exposing the prisoner to undue suffering or the threat of tangible residual injury; or (3) a doctor or an official intentionally refuses to provide care even though he is aware of the need for such care.  *Spruill,* 372 F.3d at 235 (citations omitted). A prison official is deliberately indifferent if he disregards a known excessive risk to the inmate's health and safety.  It is not enough that the official is aware of facts from which an inference can be drawn that the inmate is exposed to a substantial risk of serious harm.  The official must actually draw that inference.  *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994).

Allegations that rise to the level of simple negligence or medical malpractice are not enough to support an Eighth Amendment claim. *See Spruill,* 372 F.3d at 235.  Olmo alleges that Dumas failed to warn him of the potential side effects of his new medication. This allegation, without more, is insufficient to show deliberate indifference.  *See e.g., Bryant v. Kaskie*, 744 F. App'x 39, 42 (3d Cir. 2018) (stating that "[defendant's] alleged failure to inform [plaintiff] of the potential side effects of [a medication] is insufficient to demonstrate deliberate indifference. Even if this allegation could rise to the level of negligence, simple negligence cannot support an Eighth Amendment claim"); *Jetter v. Beard*, 130 F. App'x. 523, 526, (3d Cir. 2005) (affirming district court's dismissal of

deliberate indifference claim and agreeing "with the District Court that [defendant's] alleged failure to inform [plaintiff] of the side effects of [a medication] amounts to nothing more than negligence").  Not warning someone about potential side effects is not akin to intentionally refusing to provide care or inflicting pain.

Olmo has failed to state a claim against Dumas under § 1983.  Although he has sufficiently alleged a serious medical need, he has not alleged facts establishing deliberate indifference on the part of Dumas or any other defendant.   Therefore, we shall dismiss the constitutional claim against Dumas.

Olmo also brings a claim against the DOC.  The DOC argues that the Eleventh Amendment precludes it from suit, and Olmo agrees.[11]  Thus, we shall dismiss the DOC from the case.

### Conclusion

Olmo has failed to plead sufficient facts which, if proven, would establish that his Constitutional rights were violated by any of the named Commonwealth defendants.  He has sufficiently alleged facts to support state-law claims against Dumas, but not against Currie, Auguste, McGinley, and the DOC.

---

[11] Pl.'s Br. In Opp'n to the Commonwealth Defs.' Mot. to Dismiss at 3 (ECF No. 46) (stating that "although the Eleventh Amendment precludes subject matter jurisdiction over Mr. Olmo's state law claims against the Department of Corrections, it does not preclude subject matter jurisdiction over Mr. Olmo's state law claims against defendants Currie, Auguste and McGingley because these defendants have been sued in their individual capacities.")